UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIFFANY S., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 22 C 2116 <br><br> Magistrate Judge Sunil R. Harjani |

# MEMORANDUM OPINION AND ORDER

Plaintiff Tiffany S. seeks review of the final decision of the Commissioner of Social Security denying her claim for supplemental security income ("SSI"). Tiffany requests reversal of the administrative law judge's ("ALJ") decision and remand [15], and the Commissioner moves for summary judgment affirming the decision [18]. For the following reasons, the Court affirms the ALJ's decision.

# BACKGROUND

Tiffany was 27 years old when she applied for SSI on August 31, 2018. She alleges disability since December 3, 2013 due to bipolar, ADHD, anxiety, depression, asthma, bronchitis, COPD, osascial pain, and stomach disease. (R. 270). Tiffany has a history of mental health treatment and various learning disabilities. *Id*. at 368–73. Tiffany completed high school and has no past work. *Id*. at 271.

Tiffany's claims were initially denied on June 25, 2019, and upon reconsideration on January 8, 2020. (R. 72–84, 86–99). Upon Tiffany's written request for a hearing, on January 26, 2021 and June 2, 2021 the ALJ held two telephone hearings. *Id*. at 32–71, 1490–1532. Tiffany and her attorney attended both hearings, and vocational experts ("VE") Liala Slaise and Gary

Wilhelm testified. *Id*. At the first hearing, medical expert ("ME") Ricardo Buitrago also testified. *Id*. at 40–60. On October 26, 2021, the ALJ found Tiffany not disabled. *Id*. at 13–25. The opinion followed the required five-step process. 20 C.F.R. § 416.920. The ALJ concluded that Tiffany had the following severe impairments: chronic low back pain and mild lumbar scoliosis, asthma, bipolar disorder, depression, generalized anxiety disorder, and posttraumatic stress disorder ("PTSD"). *Id*. at 16. The ALJ further concluded that Tiffany did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id*. at 16.

Under the "Paragraph B" analysis, the ALJ found that Tiffany had moderate limitations in all four functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (R. 17). The ALJ explained that he reviewed Tiffany's function report, testimony, psychological expert testimony, and mental status examinations. *Id.* In particular, Tiffany reported that she spends time with others, does not have a problem getting along with others, sometimes has problems getting along with her family, can sometimes follow instructions, and does not handle stress or changes in routine well. *Id*. (citations omitted).

The ALJ then determined that Tiffany had the residual functional capacity ("RFC") to perform a reduced range of light work except that she: (1) can occasionally climb ladders, ropes, or scaffolds, kneel, or crawl; (2) can frequently climb ramps or stairs, stoop, or crouch; (3) should avoid concentrated exposure to extreme heat, extreme cold, and pulmonary irritants, such as fumes, odors, dust, or gases, moving machinery, and unprotected heights; (4) can perform simple, routine, repetitive tasks in a work environment free of fast-paced production requirements involving simple work-related decisions and few if any workplace changes; and (5) can only occasional [*sic*] interact

with the public and coworkers and occasional supervision. (R. 18). The ALJ concluded that Tiffany is unable to perform her past relevant work, but there were jobs that existed in significant numbers in the national economy that she could perform, including marker, scale operator, and bagger. *Id*. at 23–24. As a result, the ALJ found Tiffany not disabled. *Id*. at 25. The Appeals Council denied Tiffany's request for review. *Id*. at 1–6.

## **DISCUSSION**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform his former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. § 416.920(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 416.920(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (internal quotation marks omitted).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (internal quotation marks omitted). Nevertheless, where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

Tiffany raises one challenge to the ALJ's decision—that the ALJ failed to reconcile Dr. Jackson's opinion that she could only tolerate "low contact" work with the RFC finding that she was limited to "occasional" interaction. Tiffany argues that the ALJ did not sufficiently articulate his assessment of the evidence to enable the Court to trace his reasoning by not explaining why he found "low contact" work synonymous with "occasional interaction." *See* Doc. 16 at 8–11. Tiffany relies on two cases where the court concluded that the ALJ did not explain how a limitation to "occasional contact" accommodated a doctor's limitation to "superficial contact." *Id.* at 10 (citations omitted).

In response, the Commissioner recognizes that there is little case law within the Seventh Circuit addressing whether low contact environments contemplate occasional contact with others. The Commissioner argues, however, that the Court can trace the ALJ's reasoning, the jobs at step five were low contact in nature, and case law from other jurisdictions in the context of lower contact, brief, or superficial contact support the restriction. *See* Doc. 19 at 5–11. Moreover, the Commissioner contends that irrespective of the definition, substantial evidence supports the ALJ's decision because the ALJ relied on Dr. Buitrago's opinion that Tiffany could sustain occasional interaction. *Id*. at 11–12. The Court agrees and finds that the ALJ did not commit reversible error,

4

and his decision is supported by more than a mere scintilla of evidence. As explained below, the ALJ's reliance on Dr. Buitrago's opinion and the jobs that the ALJ selected in step five of the sequential analysis were sufficient to support the deferential standard on appeal. *See Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). Accordingly, the Court does not address whether there is any actual conflict between "occasional" and "lower" contact interactions.

1. **The RFC is Supported by Substantial Evidence**

The RFC is "the most physical and mental work the claimant can do on a sustained basis despite her limitations." *Madrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022). An ALJ has the "final responsibility" for determining a claimant's RFC. *Fanta v. Saul*, 848 F. App'x 655, 658 (7th Cir. 2021). In reaching his RFC assessment, the ALJ must "articulate at some minimal level [his] analysis of the evidence." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). In general, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Ultimately, "an ALJ need only include limitations [in the RFC] that are supported by the medical record." *Reynolds*, 25 F.4th at 473.

As background, two doctors opined on Tiffany's mental abilities and limitations that the ALJ found persuasive.[1] To start, state agency psychologist Dr. Leon Jackson completed the mental assessment for Tiffany's disability determination at the reconsideration level on December 14, 2019. (R. 91–92, 95–97). In the "paragraph B" section, Dr. Jackson found moderate limitations in all four categories, including interacting with others. *Id*. at 91. In the Section I worksheet, Dr. Jackson found marked limitations in interacting with the public, no significant limitations in

---

[1] The Court recognizes that two of the state agency psychological opinions were identical on the relevant issues. *Compare* (R. 76–77, 80–82), *with* (R. 91–92, 95–97). As a result, the ALJ assessed only one of the opinions.

asking simple questions or requesting assistance, no significant limitations in accepting instructions or responding appropriately to criticism from supervisors, moderate limitations in getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, and no significant limitations in maintaining socially appropriate behavior. *Id*. at 97. In Dr. Jackson's narrative, he opined that Tiffany was "best suited to lower contact work settings." *Id*. The ALJ evaluated Dr. Jackson's opinion. *Id*. at 22–23. In doing so, the ALJ summarized Dr. Jackson's findings and concluded that the opinion was "persuasive to the extent that it is consistent with the overall evidence, which shows that the claimant's impairments cause moderate limitations on her ability to perform mental work-related activities." *Id*. at 23.

Additionally, Dr. Ricardo Buitrago, a psychological ME, testified at Tiffany's hearing on June 2, 2021. (R. 40–60). During his testimony, Dr. Buitrago assessed ratings for the "Paragraph B" criteria, including a moderate limitation in social functioning. *Id*. at 47. Dr. Buitrago further testified that Tiffany should be able to "have *occasional* contact with co-workers, supervisors, and the general public." *Id*. (emphasis added). Moreover, Dr. Buitrago reiterated that Tiffany did not have a marked limitation in any social functioning area and was capable of occasional interaction with others. *Id*. at 56, 59–60. On September 24, 2021, Dr. Buitrago completed a request for medical interrogatories after Tiffany's initial hearing. *Id*. at 1476–82. In his responses, Dr. Buitrago opined that Tiffany had no more than moderate difficulties in social functioning. *Id*. at 1484. He further responded that Tiffany had the "[a]bility to have *occasional* contact with coworkers, supervisors, and the general public." *Id*. at 1487 (emphasis added). Dr. Buitrago's responses were consistent with his testimony at the hearing. Ultimately, the ALJ found Dr. Buitrago's opinions persuasive because they were "consistent with and supported by the record." *Id*. at 22. The ALJ explained that although Tiffany "continues to report having mental

6

health related symptoms, her treatment records support no more than moderate restrictions, which have been accounted for in her [RFC]." *Id.*

The ALJ's RFC is supported by substantial evidence because the ALJ relied on Dr. Buitrago's opinion to craft the RFC limitation at issue. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (The ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence and to enable us to trace the path of the ALJ's reasoning.") (cleaned up). As an initial matter, Tiffany does not dispute the weight the ALJ gave to any medical opinion in the record. Tiffany was clear that there was only one issue to be decided by the Court—whether the ALJ failed to reconcile limitations in Dr. Jackson's opinion. *See* Doc. 16 at 1-2.

More specifically, Tiffany's argument relies on out-of-circuit case law to assert that a court must remand because an ALJ "must incorporate the opined limitations or provide an explanation for declining to do so." *See* Doc. 16 at 9–10 (*citing Crisp v. Comm'r of Soc. Sec.*, 2020 WL 581841, at *4 (S.D. Ohio Feb. 6, 2020)). According to Tiffany, because Dr. Jackson used the word "lower contact" while the RFC limited her to "occasional" interaction, remand is required. However, district courts in the Seventh Circuit have not taken such a narrow approach. In *Hurley*, 2018 WL 4214523, at *4, one of the in-circuit cases that Tiffany relies on, the court acknowledged that only one psychologist provided a limitation regarding the claimant's ability to interact, and the ALJ gave that psychologist great weight. The court concluded that "the limited discussion in the record of the [claimant's] ability to interact with others did not build an accurate and logical bridge" because the ALJ did not accept the one directly responsive limitation. *Id.*; *see also Mack v. Berryhill*, 2018 WL 3533270, at *3 (N.D. Ill. July 23, 2018) ("This does not adequately explain

7

why the ALJ's RFC differs from the state agency psychologist's RFC opinion when the ALJ gave great weight to his opinion as the *only mental RFC in the record*.") (emphasis added).

But this is not a case where only one doctor provided a medical opinion, as in *Hurley*. Here, Dr. Jackson and Dr. Buitrago agreed that Tiffany had a moderate limitation in interacting with others. (R. 47, 91, 1484). The ALJ was then faced with two persuasive opinions regarding how much contact Tiffany could have to support a limitation for interacting with others. Dr. Jackson commented that Tiffany could have lower contact, and Dr. Buitrago opined that she could have occasional interaction. *Compare* (R. 82), *with* (R. 47, 1487). Based on these opinions, the ALJ crafted an RFC that used the phrase occasional interaction—the language from Dr. Buitrago's opinion. *Id.* at 18. To the extent there was a conflict between Dr. Jackson's and Dr. Buitrago's opinions, the ALJ resolved it by selecting one limitation for the RFC. *See, e.g.*, *Davis v. Chater*, 952 F. Supp. 561, 566 (N.D. Ill. 1996) (Where there is a conflict between medical opinions, the ALJ may choose between those opinions but may not substitute his own lay opinion for that of the medical professionals).[2]

The Seventh Circuit has also recognized "that an ALJ has some latitude with the exact wording of an RFC as long as it conveys in some way the restrictions necessary to address a claimant's limitations." *Recha v. Saul*, 843 F. App'x 1, 4 (7th Cir. 2021). In selecting the phrase occasional interaction for the RFC, the ALJ conveyed a restriction for Tiffany's moderate limitation in interacting with others. By incorporating the exact limitation that Dr. Buitrago

---

[2] The only cases that Tiffany relied to assert that there might be a conflict are in the context of "occasional contact" and "superficial contact" limitations. *See* Doc. 16 at 10 (*citing Wartak v. Colvin*, 2016 WL 880945, at *7 (N.D. Ind. Mar. 8, 2016) (remanding because "'[o]ccasional contact' goes to the quantity of time spent with the individuals, whereas 'superficial contact' goes to the quality of the interactions"); *Hurley v. Berryhill*, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018) (same)). But these cases are inapposite to the facts before this Court because Tiffany does not allege that "lower contact" is equivalent to the quality of an interaction rather than quantity. Notably, Tiffany does not rely on any caselaw where a court concluded that there is a conflict between "lower contact" and "occasional interaction."

provided, the ALJ did not independently translate a doctor's findings to craft the RFC. Instead, the ALJ reasonably relied upon Dr. Buitrago's medical opinion. *See Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019) ("[A]n ALJ may reasonably rely upon the opinion of a medical expert who translates these findings into an RFC determination."). More importantly, the two doctors at issue did not reach opposite conclusions. This is not a case where Dr. Jackson opined that Tiffany could have no contact with coworkers, supervisors, or the general public. Instead, both doctors agreed that Tiffany was only moderately limited in her ability to interact with others. *Compare* (R. 91), *with* (R. 47, 1484). Ultimately, the ALJ's decision indicates careful consideration of the evidence, including the various medical opinions of record and the acceptance of the language from Dr. Buitrago's opinion. Thus, the ALJ's reliance on Dr. Buitrago's medical opinion allows the Court to trace the ALJ's reasoning, and Dr. Buitrago's opinion provides the more than mere scintilla of evidence to support affirming the ALJ's decision.

**2. Step Five Jobs Involve the Lowest Level of Social Interaction**

Even if the ALJ erred by crediting both doctor's opinions and only incorporating the occasional interaction limitation in the RFC, the error is harmless because the jobs that the ALJ selected involve the lowest level of social interaction. The Seventh Circuit has held that a court may affirm an ALJ's decision despite errors if the errors do not impact the outcome. *See Shramek v. Apfel*, 226 F.3d 809, 814 (7th Cir. 2000). Moreover, any error is harmless because the ALJ's decision adequately rested on other evidence in the record. *See McKinley v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (explaining that it would be "a waste of time" to remand a case to the ALJ where the court is convinced that the ALJ would reach the same result).

As the Commissioner notes, each of the jobs the ALJ found that Tiffany could perform at step five of the sequential analysis involve the lowest level of complexity of social contact

contemplated by the Dictionary of Occupational Titles ("DOT"). *See* Doc. 19 at 6. In particular, the ALJ concluded that three jobs existed in significant numbers in the national economy that Tiffany could perform: (1) marker (D.O.T. #209.587-034), (2) scale operator (D.O.T. #555.687-010), and (3) bagger (D.O.T. #920.687-018). (R. 23–24). Each of the jobs has an "8" as the fifth digit of the occupational code, which signifies that the job requires the lowest level of complexity for interacting with others. *See, e.g.*, *Brown v. Astrue*, 2012 WL 264217, at *8 (C.D. Ill. Jan. 27, 2012) ("The number '8' is the highest number assigned to the fifth digit placement and so indicates that the listed job has the least complicated functions in relating to people."); *see also Voorhies v. Colvin*, 2016 WL 4761730, at *2 (W.D. Mo. Sept. 12, 2016) (reasoning that jobs with eight as the fifth digit "do not require significant interaction with supervisors or coworkers."). Specifically, the DOT for marker, scale operator, and bagger, the DOT states the following: "People: 8 - Taking Instructions-Helping N - Not Significant." *See* DOT #209.587-034, 1991 WL 671802 (rev. ed. 1991); DOT #555.687-010, 1991 WL 683446 (rev. ed. 1991); DOT #920.687-018, 1991 WL 687965 (rev. ed. 1991). Appendix B of the DOT provides that "Taking Instructions–Helping" means "[a]ttending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed.)" Appendix B - Explanation of Data, People, and Things, 1991 WL 688701. Ultimately, Tiffany did not respond to the Commissioner's argument or explain how the jobs that the VE identified, which require the lowest level of social contact, would affect the ALJ's disability determination.

Instead, Tiffany focused on two portions of the VE's testimony to assert that the VE's testimony is evidence that she cannot perform work that requires occasionally interaction. *See* Doc. 16 at 11; Doc. 22 at 2–3. The Court disagrees. At the first hearing, the VE was asked: "If the

10

individual were unable to consistently maintain interaction with supervisors, co-workers or the general public for even up to a third of the workday, would that individual be able to maintain employment in the national economy?" (R. 68). The VE responded that the jobs cited did not require interaction with co-workers or the public and stated, "if you're asking if they cannot interact consistently with a supervisor even on a less than occasional basis, then such an individual will have a challenge and adverse impact on their ability to sustain employment." *Id.* at 68–69. But this hypothetical question has no bearing on the case because Dr. Buitrago explicitly opined that Tiffany could interact with others occasionally, and the ALJ found his opinion persuasive. Again, Tiffany does not assert that Dr. Buitrago's opinion was inconsistent with the evidence or otherwise incorrect. Moreover, the jobs selected at step five implicate the lowest level of social interaction. This portion of the VE's testimony does not support a finding that Tiffany cannot perform the jobs that the VE identified. Accordingly, Tiffany has not shown that if the ALJ included "lower contact" in the RFC, in light of the above, it would have changed the bottom line.

Tiffany also points to a second hearing in support of her argument that the VE's testimony is evidence that the RFC limitation for her level of interaction would be outcome determinative. At the second hearing, the VE was asked: "if we were to add an additional limitation that the Claimant were unable to *consistently interact* appropriately with supervisors, coworkers, or the general public such without exhibiting behavior extremes, in your opinion how would that affect employability?" (R. 1529) (emphasis added). The VE responded, "[t]hat would probably eliminate it" after a warning and probationary period. *Id.* But the question the VE was asked and the response the VE provided focused on consistent interaction and behavior extremes. *Id.* Neither the question nor the answer differentiated occasional interaction or lower contact, which is Tiffany's argument before the Court. More importantly, none of the jobs the ALJ ultimately selected mention public

11

interaction in their descriptions. Nor do the jobs suggest that Tiffany would be required to consistently interact with supervisors, coworkers, or the general public. For example, the description for marker only requires the worker to notify the supervisor of discrepancies between printed price tickets and entries on purchase orders. *See* DOT #209.587-034, 1991 WL 671802. In contrast, the descriptions for bagger and scale operator do not mention any interaction. *See* DOT #555.687-010, 1991 WL 683446; DOT #920.687-018, 1991 WL 687965. Ultimately, whether the ALJ equated lower contact to mean occasional or rejected the lower contact finding would not change the bottom line— three jobs with low social interaction were available to Tiffany given the medical evidence and opinions in this case.

Finally, Tiffany's counsel examined the VE at both hearings and had an opportunity to develop and clarify the record. *See Schloesser v. Berryhill,* 870 F.3d 712, 721 (7th Cir. 2017) (explaining that the court presumes a claimant represented by counsel made her strongest case). But counsel did not ask a single hypothetical question to support her argument before this Court, including whether a limitation to lower contact work would preclude occasional contact work or the specific jobs selected here. *See* R. 68–70, 1528–30; *see also Todd B. v. Kijakazi*, 2022 WL 2132542, at *3 (N.D. Ill. June 14, 2022) (affirming in part because claimant "who was represented by counsel, had every opportunity to question the VE at the third hearing regarding transferability of skills, but Plaintiff did not do so."); *Buffolino v. Colvin*, 2015 WL 1285277, at *9 (N.D. Ill. Mar. 20, 2015) ("The Court also notes that counsel had the opportunity to question the VE about Plaintiff's specific limitations at the hearing, but failed to do so.").

In sum, the ALJ's RFC limitation, which restricts Tiffany to occasional interaction is supported by substantial evidence. In light of the evidence in this case, Dr. Buitrago concluded that Tiffany should be limited to occasional interaction, and Tiffany does not dispute the weight

12

that the ALJ gave to his opinion. The RFC that the ALJ crafted used the exact language that Dr. Buitrago suggested. Even if there was any error by not also including "lower contact" in the RFC, the ALJ selected jobs that would accommodate the lowest level of Tiffany's social interaction. Ultimately, the evidence that Tiffany has presented does not refute the adequacy of the RFC at issue or the appropriateness of the selected jobs. Thus, the Court affirms the ALJ's decision.

## CONCLUSION

For the reasons stated above, Plaintiff's request for reversal of the ALJ's decision is denied [15], the Commissioner's Motion for Summary Judgment [18] is granted, and the ALJ's decision is affirmed. The Clerk is directed to enter judgment in favor of the Acting Commissioner and against Plaintiff.

**SO ORDERED.**

Dated: August 28, 2023

                                                  Sunil R. Harjani
                                                  United States Magistrate Judge